UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIANA BOLLINGER, a minor, by and through her Guardian ad litem, JACQUELINE BOLLINGER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No.: 16cv820-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the motion for summary judgment filed by Defendant United States of America. (ECF No. 26).

**I. BACKGROUND**

On April 6, 2016, Plaintiff Kiana Bollinger, initiated this action by filing a Complaint against the United States of America and Atlantic Power Corporation[1] for negligence and premises liability. (ECF No. 1). Plaintiff seeks to hold the United States

---

[1] On December 20, 2017, Defendant Atlantic Power Corporation filed a motion for determination of good faith settlement. (ECF No. 34). The motion was granted by the Court on December 20, 2017. (ECF No. 37).

1

("Defendant") liable for damages arising from burn injuries she sustained while on Naval Base San Diego. *Id.*

On October 26, 2017, Defendant filed a motion for summary judgment. (ECF No. 26). On October 31, 2017, Plaintiff filed a response in opposition. (ECF No. 33). On November 6, 2017, Defendant filed a reply. (ECF No. 35).

The Court heard oral argument on the motion for summary judgment on February 8, 2018.

## II.   FACTS

"Naval Base San Diego has two parts, commonly referred to as the 'wet side' and the 'dry side.'" Statement of Undisputed Facts ("SUF"), ECF No. 33-5 at ¶ 1. "The movie theater is located on the wet side of Naval Base San Diego." *Id.* ¶ 9. "The Navy Exchange is located on the dry side of Naval Base San Diego." *Id.* ¶ 8. Harbor Drive divides the wet side and dry side of Naval Base San Diego. *Id.* ¶ 4. "There is no way to drive from one side of Naval Base San Diego to the other side without exiting and then entering the base." *Id.* ¶ 5. A civilian can drive onto the wet side of Naval Base San Diego through three access points including the Main Gate (Gate 6), Gate 2, and Gate 7. *Id.* ¶¶ 10-11.

"On July 18, 2015, Plaintiff, her mother (Jacqueline Bollinger), her brother (Ethan Bollinger), and her boyfriend at the time (Matthew Brumbaugh) visited Naval Base San Diego." *Id.* ¶ 15. Plaintiff's mother drove them to the Navy Exchange on the dry side of Naval Base San Diego and then to the movie theater on the wet side of Naval Base San Diego. *See id.* ¶ 16-19. "To get from the Navy Exchange to the base movie theater, Jacqueline Bollinger exited the dry side of Naval Base San Diego, drove down 32nd Street, and entered the wet side of Naval Base San Diego through the Main Gate." *Id.* ¶ 17. "32nd Street is not part of Naval Base San Diego; it is a city street." *Id.* ¶ 18. "Plaintiff was going to see the movie 'Inside Out.'" *Id.* ¶ 21. "Plaintiff was injured on the wet side of Naval Base San Diego, near the movie theater." *Id.* ¶ 22. Plaintiff did not pay an entrance fee to enter the Naval Base San Diego on July 18, 2015. *Id.* ¶ 23. "No one on behalf of the

United States government invited Plaintiff and her family to Naval Base San Diego on July 18, 2015. *Id.* ¶ 24

In the deposition of Plaintiff's mother, Jacqueline Bollinger, Bollinger states that she went to Naval Base San Diego on July 18, 2015 with Kiana, Matthew, and Ethan. Bollinger states that she "planned to go to the Exchange and get some school -- school supplies, school clothes." (J. Bollinger Dep., ECF No. 33-3 at 4). Bollinger states that upon entering Naval Base San Diego, they "went to the Exchange" where Bollinger purchased pants and school supplies. *Id.* at 5. Bollinger states that they spent "an hour and a half, close to two hours" at the Navy Exchange and then went to the food court. *Id.* at 6. Bollinger states,

> We were eating, and while we were eating we were deciding like what are we gonna do after here? Do we -- you know. So then I was like, well, let me see what kind of movies are playing today. So I went on my phone and I went to MWR San Diego Theaters, and I start scrolling through, and I noticed that there was a movie coming up in like a half hour or so. And so I asked them, Do you guys want to go to the movies? And they said yeah. So we went over there -- so then we just left straight there and went to the movies. I wasn't sure if it was going to be like a long wait or not. So we just went straight to the movies.

*Id.* at 7. Jacqueline Bollinger states in her deposition,

> Q. At the time you made the decision to go to the movies, where were you physically at that time?
> A. Physically when we decided to go to the movies?
> Q. Yeah. What location?
> A. We were eating at the food court.
> Q. Okay. And on your way to the movie theater, I believe you testified that you had to exit one of the gates at the base; is that correct?
> A. Yes.
> Q. Okay. And this is on your way to the movie theater?
> A. Yes.
> Q. Okay. And then you had to re-enter another gate?
> A. Yes. It's the same base. You exit one gate and enter another gate.

*Id.* at 11. Bollinger states that she was able to enter the base theater without having to pay for admission. *Id.* Bollinger states that she always buys beverages and popcorn upon going

to the movies. *Id.* at 11-13.

In her deposition, Plaintiff states they went to the Naval Base to get school supplies from the Navy Exchange. (K. Bollinger Dep., ECF No. 33-2 at 6). Plaintiff states, "Well, so we planned to get the school supplies. And while we were shopping, we decided to watch a movie since we were still there. So we ate and then we went to watch a movie." *Id.* Plaintiff states that they drove to the parking lot of the movie but arrived about thirty minutes early. *Id.* at 7. Plaintiff states that in order to "kill time . . . me and my brother and Brumbaugh were just walking around. And we went to the parking lot across . . . the street [from where they had parked.]" *Id.* at 7-8. Plaintiff states that she had no destination in mind while walking around the parking lot and was "just killing time." *Id.* at 9. Plaintiff states that she suffered injuries after standing on a steam grate in the parking lot. Steam rising from the grate caused blisters on her foot. *Id.* at 10-11.

## III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 255. To avoid summary judgment,

the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

## IV. CALIFORNIA RECREATIONAL USE IMMUNITY

### A. Contentions

Defendant contends that it is entitled to summary judgment as a matter of law on each cause of action because it is immune from liability under California's recreational use statute and Plaintiff provides no evidence to support any exception to the recreational use statute. Defendant asserts that Plaintiff entered the Base for the purpose of watching a free movie at the base movie theater, which Defendant contends is a recreational purpose within the meaning of the statute. Defendant contends that Plaintiff's purpose upon entering the dry side of the Base is immaterial because Plaintiff exited and re-entered the Base on the wet side for the purpose of seeing a movie. Defendant contends that regardless of whether Plaintiff entered the land for a recreational purpose, the recreational use statute applies because Plaintiff used Defendant's land for a recreational purpose. Defendant contends that the purpose of a landowner in allowing public access to land is irrelevant with respect to application of the recreational use statute. Defendant contends that Plaintiff fails to provide evidence to support the application of any exception to recreational use immunity.

Plaintiff contends that the recreational use statute does not apply because she entered the Base for the commercial purpose of shopping at the Navy Exchange and that her purpose in initially entering the Base is controlling. Plaintiff contends that it is immaterial that she briefly exited and reentered the Base to reach the theater. Plaintiff further contends that watching a movie is a commercial purpose rather than a recreational purpose. Plaintiff asserts that although the base theater does not charge an admission fee, it derives a profit from concessions and Plaintiff's family "always buys snacks at the base theater." (ECF No. 33 at 16). Plaintiff contends that the recreational use statute "clearly contemplate[s] the exclusion of" indoor activities. *Id.* at 12. Plaintiff contends that Defendant has

1 provided no authority to support the assertion that watching a movie is a recreational
2 purpose under the statute.

### B. Applicable Law

"The Federal Tort Claims Act . . . authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *United States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)). "The Federal Torts Claim Act makes the United States liable for negligence in the same manner and to the same extent as a private individual would be in similar circumstances." *Simpson v. United States*, 652 F.2d 831, 833 (9th Cir. 1981), *abrogated by Ravell v. United States*, 22 F.3d 960, 961 (9th Cir. 1994). California Civil Code section 846, the recreational use statute, applies to the United States in the same way it applies to private persons. *Id.*

California's recreational use statute "protects landowners and other interest-holders (landowners) from liability for negligence to those who enter or use their land for recreational purposes." *Mattice By & Through Mattice v. United States, Dep't of Interior*, 969 F.2d 818, 820–21 (9th Cir. 1992). Pursuant to California Civil Code section 846,

> An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on those premises to persons entering for a recreational purpose, except as provided in this section.
>
> A "recreational purpose" as used in this section, includes activities such as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, private noncommercial aviation activities, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites.
>
> This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use,

> structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration . . . ; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

Cal. Civ. Code § 846. "The purpose of section 846 was to encourage landowners to let members of the general public use their land for recreational purposes." *Phillips v. United States*, 590 F.2d 297, 299 (9th Cir. 1979) (citing *Gard v. United States*, 420 F. Supp. 300 (N.D. Cal. 1976)). Section 846 immunizes California landowners of "the duty to 'keep the premises safe' for recreational users, and the duty to warn such users of 'hazardous conditions, uses of, structures, or activities' on the premises." *Klein v. United States,* 235 P.3d 42, 48–49 (Cal. 2010) (quoting Cal. Civ. Code § 846).

"In enacting section 846, the Legislature plainly extended recreational use immunity to a broad class of land owners." *Ornelas v. Randolph*, 847 P.2d 560, 569 (Cal. 1993). The list of activities constituting a "recreational purpose" included in section 846 is not exhaustive and courts have interpreted the term broadly. *Id.* at 563. The California Supreme Court has stated,

> The examples included in section 846 . . . do not appear to share any unifying trait which would serve to restrict the meaning of the phrase "recreational purpose." They range from risky activities enjoyed by the hardy few (e.g., spelunking, sport parachuting, hang gliding) to more sedentary pursuits amenable to almost anyone (e.g., rock collecting, sightseeing, picnicking). Some require a large tract of open space (e.g., hunting) while others can be performed in a more limited setting (e.g., recreational gardening, viewing historical, archaeological, scenic, natural and scientific sites). Moreover . . . the statute draws no distinction between natural and artificial conditions . . . . Thus it is not limited to activities which take place outdoors, and does not exclude recreational activities involving artificial structures.

*Id.* at 563–64.

### C. Analysis

The California Supreme Court has determined that the recreational use statute is to be interpreted broadly and does not exclude indoor activities or recreational activities

7

involving artificial structures. Further, the application of the recreational use statute is not limited to those activities expressly listed in the statute. *Ornelas*, 847 P.2d at 563, 569. Under this precedent, courts have determined that a wide variety of activities constitute a recreational purpose within the meaning of the statute. *See, e.g.*, *id.* at 564 (determining that the recreational use statute was applicable where a child suffered injuries while playing on a piece of property where old farm equipment machinery and irrigation pipes were stored); *Mattice*, 969 F.2d at 821 ("congregat[ing] with friends at a picnic area . . . clearly falls within the scope of the statute"); *Casas v. United States*, 19 F. Supp. 2d 1104, 1105 (C.D. Cal. 1998) (entering a Marine Corps Air Station for the purpose of participating in a race was a recreational purpose); *Coryell v. United States*, 855 F. Supp. 1120, 1121 (C.D. Cal. 1994) (applying the recreational use statute where a spectator was injured after falling while attending an Air Show and Open House at the Miramar Naval Air Station); *Pangelinan v. United States, et al.*, No. 15-cv-1730-L-KSC (S.D. Cal. Dec. 2, 2016) (concluding that a boot camp graduation constituted a recreational purpose). The Court concludes that watching a movie may constitute a recreational purpose within the meaning of the recreational use statute.

Plaintiff contends that the commercial purpose of the movie theater precludes application of the recreational use statute in this case. It is undisputed that admission to the Base and the base movie theater movie is free. However, Plaintiff asserts that the movie theater is a commercial endeavor because the base movie theater derives a profit from concessions. The California Supreme Court has previously stated

> [T]he broad language of the statute suggests that the Legislature consciously eschewed any restrictions on the property subject to the statute in order to provide clear guidance to landowners, to encourage access to recreationists, and to fairly balance the interests of both. One who avails oneself of the opportunity to enjoy access to the land of another for one of the recreational activities within the statute may not be heard to complain that the property was inappropriate for the purpose.

8

*Ornelas*, 847 P.2d at 603. Under the language of the statute, recreational use immunity is determined by the purpose of those who enter or use the land, rather than the purpose of the landowner in allowing access to the land. Cal. Civ. Code § 846 ("for entry or use by others for any recreational purpose"); *see also Casas*, 19 F. Supp. 2d at 1107 ("The statute itself refers to recreational activities of those who use the land, not the landowners. Furthermore, the case law consistently addresses the statute as applying to the recreational use, not the landowner's purpose in allowing access to the property.") In this case, the recreational use statute is applicable if Plaintiff's purpose in entering or using the Base was recreational. Any purpose Defendant may have had in granting Plaintiff access to the land is not determinative of the application of the recreational use statute.[2]

It is undisputed that Plaintiff left the Base after shopping at the Navy Exchange on the dry side of the Base. It is undisputed that Plaintiff then re-entered the Base on the wet side of the Base for the purpose of watching a movie at the base movie theater. The Court has concluded that watching a movie constitutes a recreational purpose within the meaning of the recreational use statute. Because Plaintiff entered the Base for the recreational purpose of watching a movie, the recreational use statute is applicable to any injuries sustained by Plaintiff while traveling within the property. *See Mattice*, 969 F.2d at 821 ("Section 846 does not require that a plaintiff be engaged in a recreational activity at the time of the accident. The plain language states that a landowner 'owes no duty of care to keep the premises safe *for entry* or use by others for any recreational purpose'. . . . Thus, the statute applies to injuries sustained while plaintiff travels within the property as long as the plaintiff's purpose in entering the property was recreational.").

Defendant contends that the purpose of Plaintiff's first entry onto the Base to shop at the Navy Exchange is controlling and precludes application of the recreational use

---

[2] The recreational use statute does provide an exception to recreational use immunity when permission to enter land for a recreational purpose is granted for a consideration. The Court addresses exceptions to recreational use immunity *infra*.

statute. However, the recreational use statute provides, "An owner of any estate or any other interest in real property . . . owes no duty of care to keep the premises safe for entry *or use* by others for any recreational purpose." Cal. Civil Code. § 846 (emphasis added). At the time she sustained her injuries, Plaintiff was on the wet side of the Base for the purpose of watching a movie on the base movie theater and was "killing time" in a parking lot prior to the movie. (K. Bollinger Dep., ECF No. 33-2 at 9). Even if the first entry onto the Base was controlling and Plaintiff had not entered the Base for a recreational purpose, the undisputed facts establish that Plaintiff was *using* the premises for the purpose of watching a movie at the time of her injury. Under the undisputed facts of this case, the recreational use statute is applicable and Defendant cannot be held liable for Plaintiff's injuries, absent any applicable exception to the recreational use statute.

The statute provides for several exceptions to section 486 immunity.

> Under section 846, an owner of any estate . . . owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give recreational users warning of hazards on the property, unless: (1) the landowner willfully or maliciously fails to guard or warn against a dangerous condition, use, structure or activity; (2) permission to enter for a recreational purpose is granted for a consideration; or (3) the landowner expressly invites rather than merely permits the user to come upon the premises.

*Ornelas*, 847 P.2d at 562. Plaintiff does not contend or provide any evidence sufficient to create a disputed issue of material fact regarding the exception for willful or malicious behavior or the express invitation exception. It is undisputed that no one on behalf of the United States government invited Plaintiff and her family to Naval Base San Diego on July 18, 2015. (SUF, ECF No. 33-5 at ¶ 24).

Plaintiff does not expressly contend that the consideration exception applies; however, Plaintiff contends that watching a free movie on Naval Base San Diego is a commercial endeavor because the establishment derives a profit from the sale of concessions.

> To trigger the consideration exception of section 846, payment must be made in exchange for "*permission to enter*" the property or "received from others

10

> for the same purpose." . . . Consistent with this text, the few published California cases interpreting the consideration exception have noted that for the exception to apply, consideration must generally be paid "in the form of an entrance fee."

*Miller v. Weitzen*, 35 Cal. Rptr. 3d 73, 78 (Ct. App. 2005) (internal citations omitted). It is undisputed that Plaintiff did not pay to enter the Naval Base on July 18, 2015 and that admission to the base movie theater is free. (SUF, ECF No. 33-5 at ¶¶ 23, 25; J. Bollinger Dep., ECF No. 33-3 at 11; K. Bollinger Dep., ECF No. 26-3 at 45). Further, individuals are not required to make a purchase of concessions in order to attend a movie at the base movie theater. (J. Bollinger Dep., ECF No. 33-3 at 12). Plaintiff has raised no disputed issue of material fact with respect to the application of the exceptions to section 846 immunity.

The Court concludes that under the undisputed facts of this case, Defendant is entitled to immunity from Plaintiff's suit for damages arising from injuries she sustained while on Naval Base San Diego.

## V. CONCLUSION

IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendant United States of America is GRANTED. (ECF No. 26).

Dated: February 23, 2018

Hon. William Q. Hayes
United States District Court